HARVEY A. SWEETLAND, Respondent, *v.* FRANKLIN S. BUELL, Individually and as Executor of JONATHAN S. BUELL, Deceased, et al., Appellants.

1. REQUEST FOR DIRECTION OF VERDICT — WAIVER OF RIGHT TO GO TO JURY. Defendants who stand upon their motion for the direction of a verdict in their favor and upon their exceptions to the direction of a verdict for plaintiff and to the refusal to direct a verdict in their favor, without requesting the submission of any specified questions of fact, thereby submit them to the court, and waive their right to go to the jury.

2. JUDGMENT — LIEN OF, AS AGAINST A BONA FIDE PURCHASER WITHOUT NOTICE BEFORE DOCKET. Under sections 1 and 3 of chapter 50 of 1 Revised Laws of 1813, no judgment affecting any lands, tenements, real estate or chattels real had any preference until the record thereof had been filed and docketed as against a *bona fide* purchaser of such real property for a valuable consideration, and a deed given by the judgment debtor for a consideration expressed therein upon the day judgment was entered, without proof that the judgment was entered first, or that the purchaser had actual or constructive notice thereof, is valid as against the judgment.

3. RULE THAT DEED TO ONE COTENANT INURES TO EQUAL BENEFIT OF THE OTHER — WHEN NOT APPLICABLE. The rule that the purchase of an outstanding title by one of two tenants in common of real property inures to the benefit of his cotenant as well as himself does not apply where the deed claimed to create the cotenancy did not convey any title because the grantor had previously parted with all his title, since in that case the relation of tenants in common does not exist.

4. TENANCY IN COMMON — ADVERSE POSSESSION — OUSTER — CONVEYANCE OF ENTIRE ESTATE BY ONE TENANT IN COMMON. If one tenant in common of real property assumes to sell and convey the entire estate, apparently doing so, and his grantee assumes to take it and goes into

possession, and he and his grantees hold the same for more than forty years, the possession thus taken and held may be treated as an ouster of the cotenant, and constitutes adverse possession.

5. EVIDENCE AS TO CAPACITY IN WHICH GRANTEES TAKE, WHEN IMMATERIAL. The rejection of a certified copy of the inventory of an estate filed by executors, upon the question whether they took as executors, or as tenants in common in their own right, under a deed executed to them, is not reversible error in an action to compel the determination of an adverse claim of title based on such deed, where, in either event, such deed conveyed no title as against the title under which the plaintiff claims.

6. PRESUMPTION OF DELIVERY FROM RECORD OF DEED. The fact that deeds are recorded raises the presumption that they were recorded by the grantee, and proof of that fact is *prima facie* and presumptive evidence of delivery.

*Sweetland* v. *Buell*, 89 Hun, 543, affirmed.

(Argued October 12, 1900; decided November 20, 1900.)

APPEAL from a judgment of the Supreme Court, entered July 3, 1896, upon an order of the late General Term in the fifth judicial department, overruling defendants' exceptions ordered to be heard in the first instance at General Term, denying a motion for a new trial and directing judgment for plaintiff upon a verdict directed by the court on trial at Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George Wadsworth* for appellants. The deed from Williams Holt to Joseph Clary did not vest the title in Clary as sole tenant, but it inured to the benefit of his cotenants. One tenant in common cannot buy out an outstanding or adverse title so as to defeat the rights of his cotenants. The purchase will inure to their common benefit, subject to the equal contribution of the expense. (*Van Horne* v. *Fonda*, 5 Johns. Ch. 388; *Phelan* v. *Kelly*, 25 Wend. 389; *Burrell* v. *Bull*, 3 Sandf. Ch. 15; *Jackson* v. *Streeter*, 5 Cow. 529; *Burnham* v. *Van Zandt*, 7 N. Y. 523.) The agreement of one tenant in common to sell does not bind the others. The conveyance by one tenant in common does not pass the interest of his cotenant. (*Erwin* v. *Olmsted*, 7 Cow. 229; *Blood* v. *Good-*

*rich*, 9 Wend. 68.) The proof of possession by the plaintiff and his grantors is not sufficient to defeat the rights of the heirs at law of Asa Rice and their grantee. Such heirs at law and their grantee are, and at all times have been, tenants in common of these premises with Joseph Clary and his grantees. (*Hulse* v. *Hulse*, 23 N. Y. S. R. 123; *Bliss* v. *Johnson*, 94 N. Y. 235; *Doherty* v. *Matsell*, 119 N. Y. 646; *Kathan* v. *Rockwell*, 16 Hun, 90.) To establish adverse possession by a tenant in common such as will effect the ouster of his cotenant, notice in fact to the latter of the adverse claim is required, or unequivocal acts, open and public, making the possession so visible, hostile, exclusive and notorious that notice may fairly be presumed. (*Culver* v. *Rhodes*, 87 N. Y. 348; *Wainman* v. *Hampton*, 110 N. Y. 429; *Buttery* v. *R., W. & O. R. R. Co.*, 14 N. Y. S. R. 131; *Brandt* v. *Ogden*, 1 Johns. 156; *Doe* v. *Campbell*, 10 Johns. 475; *Jackson* v. *Leonard*, 9 Cow. 653; *Hamerschlag* v. *Duryea*, 38 App. Div. 130.) The defendants set up a claim to the premises and demanded affirmative relief. They, therefore, were entitled to submit to the jury the question whether or not the possession of the plaintiff or his grantors was and had been adverse to the title of their tenants in common, and the court erred in directing a verdict for the plaintiff without submitting that question to the jury. (*King* v. *Ross*, 85 N. Y. S. R. 138.)

*Clark H. Timerman* for respondent. The title by warranty deeds in the plaintiff was perfect. (*Webster* v. *Van Steenberg*, 46 Barb. 211; *Ring* v. *Steele*, 2 Keyes, 450.) The deed stands on record and that is sufficient proof of its delivery. The deed is presumed to have been recorded by the grantee, and the fact that it is on record is *prima facie* and presumptive proof of delivery and conveyance of title. (*Wilsey* v. *Dean*, 44 Barb. 354; *Sutton* v. *Warsling*, 108 N. Y. 520.) The sheriff's deed under which the defendants claim title did not convey any title to defendants and was void as against Williams Holt. (*Buchanan* v. *Sumner*, 2 Barb. Ch. 165; *Clark* v. *Dakin*, 2 Barb. Ch. 36; *Jackson* v. *Dubois*,

4 Johns. 216; *Cory* v. *Cornelius*, 1 Barb. Ch. 571; *Jackson* v. *Ellston*, 12 Johns. 452; *Day* v. *Dunham*, 2 Johns. Ch. 182; *Jackson* v. *Burgott*, 10 Johns. 457; *Bockes* v. *Lansing*, 74 N. Y. 437; *Jackson* v. *Roberts*, 11 Wend. 422; *Goldman* v. *Kennedy*, 49 Hun, 157.) The title of the plaintiff was complete through adverse possession. (*Baker* v. *Oakwood*, 123 N. Y. 16; *O'Connor* v. *Higgins*, 113 N. Y. 511; *Clapp* v. *Bromaghan*, 9 Cow. 530; *Bogardus* v. *Trinity Church*, 4 Paige, 178; *Jackson* v. *Smith*, 13 Johns. 406; *Towne* v. *Needham*, 3 Paige, 545; *Florence* v. *Hopkins*, 46 N. Y. 182; *Bradstreet* v. *Clark*, 12 Wend. 602; *Jackson* v. *Brink*, 5 Cow. 453.) The conveyance of the premises by Joseph Clary to Martin Koebel and Adam Pforter conveyed the whole premises as by an executor's deed. (*People* v. *Kaiser*, 28 N. Y. 234; *Bradstreet* v. *Clark*, 12 Wend. 602; *Hitchcock* v. *Dundas*, 12 How. [U. S.] 271; *Sage* v. *Sherman*, 2 N. Y. 417; *Fairchild* v. *Fairchild*, 64 N. Y. 471.)

MARTIN, J. This action was commenced against Jonathan S. Buell in April, 1893. In March, 1894, Buell died and subsequently the present defendants, who are the heirs and personal representatives of the decedent, were made parties defendant. The purpose of the action was to compel the determination of a claim of title adverse to that of the plaintiff made by the decedent and those succeeding him in interest. The decedent and the defendants, as successors to his interest, claimed to be the owners of an undivided one-half of the premises in question. As the plaintiff was in possession, this action was brought in pursuance of the provisions of section 1638 of the Code of Civil Procedure.

On and prior to February 5, 1819, premises of which those in question formed a part were owned by one Elijah Holt. They were in what was then Niagara and now is Erie county. On that day he gave a warranty deed of the premises to one Williams Holt, which was acknowledged and recorded on the sixth day of the same month. The consideration named therein was $1,887.50.

On the day the foregoing deed was given, one Reuben B. Heacock recovered a judgment in the Court of Common Pleas for Niagara county against Elijah Holt for three hundred and ten dollars. An execution was issued thereon to the sheriff of that county, which was tested June 5, 1819, four months after the judgment was recovered. A sheriff's deed was given April 12, 1820, in which it is recited that by virtue of that execution and another issued on a judgment against Elijah Holt and one Cotton, tested February 12, 1820, he seized the land then owned by Elijah Holt, and, for the sum of three hundred and twenty dollars, sold it to Asa Rice and Joseph Clary, " said Asa and Joseph being executors of John Dill of Otsego county, deceased." This deed purported to grant to Rice and Clary, who were partners in business and executors of the will of John Dill, all the estate, title and interest that Elijah Holt had in the premises on the fifth day of February, 1819. Asa Rice died in 1823, leaving three children, John D. Rice, who was then of the age of eleven years; Norman Clary Rice, aged five years, and Henry Rice, aged three years. John D. Rice died in 1855 without issue, leaving a widow who died soon after, and leaving Norman Rice and Henry Rice his only heirs at law him surviving, who were also the only surviving heirs of Asa Rice, deceased.

On September 13, 1828, Joseph Clary made, executed and acknowledged a warranty deed of said premises to Martin Koebel and Adam Pforter. The consideration named was thirteen hundred and forty dollars. This deed was recorded November 5, 1828. On October 17, 1829, Williams Holt, in consideration of two hundred dollars, by warranty deed, conveyed the premises formerly owned by Elijah Holt to Joseph Clary. The deed was recorded upon the same day.

On December 31, 1828, Adam Pforter executed and acknowledged a warranty deed of one undivided half of said premises to Martin Koebel, which was recorded March 14, 1868. The consideration expressed therein was sixteen hundred dollars. On August 1, 1864, Martin Koebel made, executed and acknowledged a deed to Philip Koebel of the whole

69

of said farm or premises, for the consideration of twenty-five hundred dollars.   This deed was recorded February 27, 1868.

September 7, 1868, Philip Koebel made, executed and acknowledged a warranty deed of the whole of. said premises or farm to Elam R. Jewett, which was recorded September 10, 1868, the consideration expressed being six thousand dollars.   On February 19, 1886, Elam R. Jewett. made, executed and acknowledged a deed to the Parkside Land and Improvement Company, which was recorded March 16, 1886.   This deed conveyed the whole of said farm, including the lands in question, and expressed a consideration of $44,148.00.   On May 20, 1892, the Parkside Land and Improvement Company made, executed and acknowledged a deed to the plaintiff, which was recorded May 24, 1892.   The consideration expressed was the sum of one dollar.   This deed conveyed the premises in question and other lands.

On the fourteenth of May, 1892, Henry Rice, as surviving heir of Asa Rice, deceased, made and executed a quitclaim deed of said premises to Jonathan S. Buell, the original defendant in this action, which was recorded on the twenty-fourth of the same month.   The consideration expressed in that deed was the sum of one dollar and other valuable considerations.   On December 31, 1892, Norman Clary Rice made and executed a quitclaim deed of the whole of the premises to said Jonathan S. Buell for the consideration of one dollar and other valuable considerations, which, according to the record in this case, was recorded on June 24, 1892, six months before it was made.   The date of the deed is probably a mistake.

From this epitome of the chain of title under which the parties claim, we find that Elijah Holt was the common source of title.   The plaintiff claimed under the deed from Elijah Holt to Williams Holt, the deed from Williams Holt to Joseph Clary, the deed from Joseph Clary to Martin Koebel and Adam Pforter, a deed of an undivided one-half from Pforter to Martin Koebel, a deed from Martin Koebel to Philip Koebel, a deed from Philip Koebel to Jewett, a deed from Jewett

to the Parkside Land and Improvement Company, and a deed from the Parkside Land and Improvement Company to the plaintiff.

On the other hand, the defendants claim that under and by virtue of the sheriff's sale under the judgments against Elijah Holt, to which we have referred, and the deed given in pursuance thereof, the title to the premises passed to Asa Rice and Joseph Clary as tenants in common ; that being such tenants in common a transfer by Clary to Koebel and Pforter conveyed only the title to an undivided one-half of the premises ; that the surviving heirs of Asa Rice were vested with the other undivided one-half, and that, by quitclaim deeds to Jonathan S. Buell from the two remaining heirs, their title to the premises was conveyed to him, and, hence, the present defendants or some of them are the owners in fee of an undivided one-half thereof.

The plaintiff also claims title by virtue of the adverse possession of himself and his grantors. The proof tends to show that as early as 1829 and from then until the title was conveyed to Jewett the grantees of the premises had actual possession of the land, occupied and worked it for farming purposes, raising crops upon it annually, and that after the transfer to Jewett he went into possession thereof and used and occupied it for agricultural purposes, the whole of the land being fenced and under cultivation until November 1, 1885, when the premises were transferred to the land and improvement company ; that they were afterwards occupied by Jewett in the same way under the improvement company until 1887 or 1888, when the company took possession of the property, caused streets to be laid out and graded, cut the land into lots, advertised them for sale, and occupied it in that way until May, 1892, when the premises in question were conveyed to the plaintiff, who has occupied them since that time. The proof discloses quite clearly that the lot in question was in the exclusive possession of the plaintiff and his grantors for more than fifty years before the commencement of this action, and that such possession was under a claimed right of ownership,

was open, visible, notorious and hostile to any other claim. The evidence bearing upon the possession and the manner in which the premises were occupied was undisputed.

When the evidence closed the defendants moved for the direction of a verdict in their favor. That motion was denied. The court then directed a verdict for the plaintiff, and ordered the defendants' exceptions to be heard in the first instance at the General Term. The defendants excepted to the court's direction and to its refusal to direct a verdict in their favor. Having stood upon their motion for the direction of a verdict in their favor and upon their exceptions, without requesting the submission of any specified questions of fact, they thereby submitted them to the court, and waived their right to go to the jury. Consequently, all the controverted facts and infer- ences in support of the judgment should be deemed to have been established in the plaintiff's favor, and the decision of the court upon the facts must be given the same effect as if the jury had found a verdict in the plaintiff's favor after the case was submitted to it. (Baylies' Trial Practice, p. 322 *et seq.; Trimble* v. *N. Y. C. & H. R. R. R. Co.*, 162 N. Y. 84, 91.) It follows that the defendants' appeal cannot be sus- tained unless they were entitled, as a matter of law, to the direction of a verdict in their favor. Hence, the question is whether, under the evidence, the defendants have either estab- lished title in themselves, or the plaintiff failed to show that he had title to the premises in question under any view of the evidence which might be taken by the trial court. These questions will be examined in the order in which they are stated.

*First*, then, have the defendants established a legal title to the premises superior to that of the plaintiff? At the thres- hold the question arises whether Rice and Clary, by their pur- chase under the sale upon the execution against Elijah Holt, obtained a title paramount to that acquired by Williams Holt under the deed of Elijah Holt, made on the fifth of February, 1819. If we assume that the evidence was sufficient to show a judgment, an execution issued to the sheriff June 5, 1819, a

sale upon such execution, and that a sheriff's deed was given in pursuance of such sale on April 12, 1820, still another point must be determined, which is whether, in view of the fact that the judgment was not docketed at the time of the conveyance to Williams Holt, it constituted a valid lien which was prior or superior to the title obtained by virtue of that deed. If it did not, then it seems clear that as there was no lien upon the premises the deed was valid and passed the title, unless the grantee had notice of such judgment. This sale was made in 1819. Under the statute as it then stood, the docketing of a judgment was not essential to the sale of land by virtue of an execution issued upon it, but the statute expressly provided that no judgment which was not docketed should affect any lands or tenements as to purchasers or mortgagees. (1 Rev. Laws, 1813, ch. 50, §§ 1, 3.) It was held in *Buchan* v. *Sumner* (2 Barb. Ch. 165) that under this statute no judgment would affect any lands, tenements, real estate or chattels real, or have any preference until the record thereof had been filed and docketed. While in *King* v. *Harris* (34 N. Y. 330, 332) it was said that the correctness of that decision was not free from doubt, upon principle, as against subsequent liens which did not stand in the *bona fide* relation of having parted with a consideration, still, the integrity of the decision in the *Buchan* case was in no way questioned where the relation of the subsequent lien or title was *bona fide* and the lienor or grantee had parted with a consideration for the property conveyed.

The deed was given and the judgment entered upon the same day, so that it is difficult, if not impossible, to now determine which was first entered or executed. If, however, it be assumed that the Heacock judgment was entered before the delivery of the deed by Elijah Holt to Williams Holt, still, as the judgment was not docketed, it did not affect the Williams Holt title unless he had notice of the judgment. In the deed from Elijah Holt to Williams Holt, the consideration expressed was $1,887.50, which was *prima facie* evidence that the purchase was for a valuable consideration. ( *Wood* v. *Chapin*, 13

N. Y. 509; *Ring* v. *Steele*, 4 Abb. Ct. App. Dec. '68; *Page*
v. *Waring*, 76 N. Y. 463, 469.) There is no evidence which
would justify the conclusion that Williams Holt had any
notice of the judgment against Elijah Holt when he took his
conveyance, and no such fact can be presumed. Actual notice
of the judgment, or perhaps knowledge or notice of facts
which would put a prudent man upon inquiry, would impeach
the good faith of such purchaser. But to justify that result,
there must be proof of actual notice or circumstances tending
to show such prior right. Actual notice of itself would
impeach the subsequent conveyance, and proof of circum-
stances short of actual notice which would put a prudent man
upon inquiry might authorize a court or jury to infer and find
actual notice. But there is no proof in the record upon which
it could be properly found that Williams Holt had any notice
of the judgment, actual or constructive, when he took his
conveyance.

The appellants further contend that as Asa Rice and Joseph
Clary were tenants in common under a title obtained by virtue
of the sheriff's sale and a deed given in pursuance thereof,
Clary could not purchase the outstanding title of Williams
Holt for his own benefit, but that as between him and Asa
Rice the purchase inured to the benefit of Rice as well as him-
self, Rice being chargeable with his proportionate share of the
expense. The answer to this proposition is that neither Rice
nor Clary, nor both together, obtained any title under the
sheriff's deed, as the title vested in Williams Holt before such
sale as against them under and by virtue of the deed from
Elijah Holt, and, consequently, they never occupied the rela-
tion of tenants in common. Again, if the relation of tenants
in common ever existed between Clary and Rice, it had ceased
at the time Clary took title of Williams Holt, as Clary had
previously transferred to Koebel and Pforter all the right,
title and interest he had in the premises, so that at that time
he had no title either as tenant in common or otherwise. The
purpose of Clary's purchase from Holt is quite obvious. He
had given a deed of the premises with a warranty of title,

and, hence, was required to make it good. To do so he subsequently purchased the title of Williams Holt, thus protecting himself against liability under his warranty. While it must be admitted as an abstract proposition of law that the possession of one tenant in common is, in a legal sense, that of all until he assumes a position hostile to the relation of his cotenant and to have an exclusive right to the property, and that he cannot convey their interests in it, yet, for the reasons already suggested, that principle, as well as the principle upon which it is claimed that Clary's purchase inured to the benefit of Asa Rice, has no application here.

Moreover, if one tenant in common assumes to sell and convey the entire estate, apparently doing so, and his grantee assumes to take it and goes into possession, the possession thus taken and held by him may be treated as an ouster of the cotenants and constitute adverse possession. (*Clapp* v. *Bromagham*, 9 Cow. 530; *Bogardus* v. *Trinity Church*, 4 Paige, 178; *Town* v. *Needham*, 3 Paige, 545; *Florence* v. *Hopkins*, 46 N. Y. 182, 186; *Baker* v. *Oakwood*, 123 N. Y. 16.) The evidence in this case warranted the conclusion that the premises in question were in the actual possession of the grantees under the Williams Holt deed and other subsequent deeds purporting to convey the entire estate, and that they took their conveyances as grants having that effect and held possession under them, claiming title of the whole for more than fifty years continuously and for more than forty years since the youngest heir of Asa Rice reached his majority. We think it is clear, for the reasons previously stated as well as that of the adverse possession of the plaintiff and his grantors, that the children and heirs of Asa Rice were effectually concluded from asserting a claim to any estate in the premises in question, and, hence, that their deed to Jonathan S. Buell was ineffectual to support any claim thereto either in his behalf or that of the defendants who succeeded to his title or estate. If it be said that there were questions of fact arising upon the evidence as to adverse possession or notice in Williams Holt of the judgment against Elijah Holt, still, since

those questions were submitted to the trial court, its disposition of them must be regarded as final.

Whether the sheriff's deed purported to convey the premises to Asa Rice and Joseph Clary as executors of John Dill, or as tenants in common in their own right, under our view of the case, is of no consequence, because, as we have already seen, they took no title under that deed as against the title under which the plaintiff claims. If we are correct in our conclusion that the title to the property in question passed by the deed from Elijah Holt to Williams Holt, the legal title became vested in him and the occupation of the premises by his grantees of that title is presumed to have been under it and not under the grantees in the sheriff's deed.

We think no reversible error was committed by the court in refusing to receive in evidence a certified copy of the inventory of the estate of John Dill filed by Asa Rice and Joseph Clary as executors, as the question to which that evidence was directed is immaterial to the proper disposition of the case.

The appellants' claim that under their pleadings they were entitled to submit to the jury the question whether the possession of the plaintiff and his grantors was adverse, is not before us, as they made no request that it should be thus submitted.

If it be said that there is no evidence of a sufficient delivery of any of the various deeds under which the plaintiff claims title, the answer is that they are all recorded as was shown by certified copies of their record, which raises the presumption that they were recorded by the grantee, and the proof of that fact is *prima facie* and presumptive evidence of delivery. (*Wilsey* v. *Dennis*, 44 Barb. 354; Devlin on Deeds, § 292; *Lawrence* v. *Farley*, 24 Hun, 293; *Munoz* v. *Wilson*, 111 N. Y. 295, 304.)

While the defendants set up in the answer that the deed from Elijah Holt to Williams Holt was void for fraud, no sufficient evidence was offered to support that allegation, and surely there was none which would justify this court in

holding as a matter of law that it was fraudulent. If there was any evidence upon the subject, circumstantial or otherwise, that question has been disposed of by the trial court.

The judgment should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, VANN and LANDON, JJ., concur.

Judgment affirmed.