## MAHANEY v. WALSH.

(Supreme Court, Appellate Division, Fourth Department. April 10, 1897.)

1. CONVERSION—WHAT CONSTITUTES—WRONGFUL ACTS OF OWNERSHIP.
   Defendant sold to plaintiff's testator 75 shares of corporate stock, being part of 216 shares for which defendant had a certificate, but he retained possession of the certificate, and the shares were not transferred to testator. Afterwards defendant transferred the 216 shares to a third person, to whom a new certificate was issued, and a transfer made on the stock book. *Held* a conversion by defendant of the 75 shares sold to testator.

**2.** EXECUTORS AND ADMINISTRATORS—ASSIGNMENT OF SECURITIES—INDIVIDUAL ACT.

An executor may, in his individual name, assign securities belonging to the estate.

**3.** ASSIGNMENT RIGHTS OF ASSIGNEE—CONVERSION OF ASSIGNED PROPERTY.

An assignment of personal property after a conversion thereof gives the assignee a right to sue for the conversion.

Action by James M. Mahaney against John D. Walsh. The court directed a verdict in favor of defendant, and plaintiff moves for a new trial on exceptions ordered to be heard by the appellate division in the first instance. Granted.

Action to recover the value of 75 shares of the capital stock of the American District Steam Company, of the value of $100 per share, commenced in Niagara county, March 11, 1895. This company was a corporation transacting business at Lockport, N. Y. On the 3d day of March, 1883, there were issued to the defendant by this corporation 216 shares of its capital stock in one certificate (No. 274), in which it was stated that the same were transferable only on the books of the company, in person or by attorney, on surrender of the certificate, duly assigned. On the 14th day of April, 1883, the defendant and his wife, by an instrument under seal, duly acknowledged, in consideration of the sum of one dollar did sell, grant, and convey to Mary Mahaney and her heirs and assigns 75 shares of the capital stock of the said corporation, said 75 shares being a part of the said 216 shares issued to the defendant as aforesaid. There was evidence tending to prove the delivery of this instrument to Mary Mahaney, but the entire evidence leaves that question in considerable doubt. Mary Mahaney died October 22, 1889, leaving a last will and testament, in which she appointed John C. Mahaney, her son, executor. On the 11th day of November, 1889, her will was admitted to probate by the surrogate of Niagara county, and letters testamentary were issued to the executor, and on the same day the defendant executed and delivered to J. H. Babcock an instrument in writing, written upon the back of the certificate for the 216 shares, which is as follows:

"For value received, I hereby sell, assign, and transfer to I. H. Babcock the within two hundred and sixteen shares of stock of the American District Steam Company represented in the within certificate, and do irrevocably constitute and appoint —— attorney to transfer the same on the books of the company, with full power of substitution.

"Witness my hand this —— day of ——.        J. D. Walsh."

Mr. Babcock was at that time the treasurer of the corporation. On the 29th of January, 1890, Babcock, by an instrument in writing, transferred the 216 shares, for the consideration of one dollar, to Mary F. Walsh, the defendant's wife. On the 4th of June, 1894, the executor, John C. Mahaney, made, executed, and delivered to the plaintiff herein an instrument in writing as follows:

"For a good and valuable consideration, to me in hand paid, the receipt whereof is hereby acknowledged, I do hereby sell, assign, transfer, and set over unto James M. Mahaney, of the city of Lockport, N. Y., all my right, title, and interest in and to seventy-five shares of the capital stock of the American District Steam Company, said seventy-five being part of the two hundred and sixteen shares held in the name and certificate of John D. Walsh (No. 274); to have and to hold the same unto the said James M. Mahaney, his heirs and assigns forever. Witness my hand and seal this 4th day of June, 1894.        John C. Mahaney. [L. S.]"

The 75 shares were never transferred upon the books of the corporation from the defendant to Mary Mahaney nor was any notice of the transfer to her given to it. The certificate No. 274 seems to have been cut from the stock book of the corporation, and afterwards returned, and pasted back in its place. There was evidence tending to show the value of the stock, and that dividends had been paid upon it by the corporation. Upon the close of the plaintiff's

proof, the defendant moved for a nonsuit upon the ground that Mary Mahaney obtained no title to the said 75 shares of stock under the transfer to her, and that there was no delivery of the same to her, and that the only way that she could obtain title to the same was by a certificate transferring title to her entered upon the books of the corporation, or a refusal to make such entries; and that there had been no conversion proved by the defendant of the 75 shares of stock. This motion was denied, but afterwards the defendant asked for the direction of a verdict upon the same grounds. The plaintiff asked to go to the jury upon all of the questions of fact in the case, which request was denied by the court, and the plaintiff excepted. The court directed a verdict for the defendant, and ordered the exceptions to be heard in the first instance by the appellate division of this court.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Henry M. Davis, for plaintiff.
Richard Crowley, for defendant.

WARD, J.   The transfer of the 75 shares of stock from the defendant to Mary Mahaney, the testatrix, conferred upon her the legal title to those shares, and no transfer of the stock upon the books of the corporation was necessary as between the defendant and her. But, as between Mary Mahaney and the corporation, in order to entitle her to receive dividends, and enjoy the benefits of her stock, the proper transfer should have been made upon the books of the corporation. Until that was done, the defendant was the nominal owner of the stock, and treated as the trustee of the stock for Mary Mahaney. Johnson v. Underhill, 52 N. Y. 203; Bank v. Smalley, 2 Cow. 770; Leitch v. Wells, 48 N. Y. 585. A delivery of the stock to Mary Mahaney was not necessary to perfect her title to it. Mitchell v. West, 55 N. Y. 107; Caywood v. Van Ness, 74 Hun, 28, 26 N. Y. Supp. 379, affirmed 145 N. Y. 600, 40 N. E. 163; Schoonmaker v. Vervalen, 9 Hun, 138; Beardsley v. Beardsley, 138 U. S. 262, 11 Sup. Ct. 318. But, if delivery were necessary, the plaintiff furnished proof that should have been submitted to the jury upon that subject.

Two questions remain to be considered: First. Was there a conversion by the defendant of the 75 shares of stock? Second. Did the executor, in executing the assignment of the cause of action to the plaintiff in his individual name, transfer the 75 shares, and the claim for their conversion, to the plaintiff. Conversion has been defined as follows:

"Conversion consists as a tort either in the appropriation of the personal property of another to the party's own use and benefit, * * * or in exercising dominion over it in exclusion and defiance of the rights of the owner or lawful possessor * * * under a claim and title inconsistent with the owners. The action of trover is founded on the right of property and possession, and any act of the party other than the owner which militates against this conjoint right in law is a conversion. It is not necessary for a manual taking to make conversion, nor that the party has applied it to his own use. The question is, does he exercise dominion over it in exclusion or in defiance of the owner's rights? If he does, that is a conversion." 4 Am. & Eng. Enc. Law, p. 108.

This definition seems to be sustained by authorities. Boyce v. Brockway, 31 N. Y. 490; Caywood v. Van Ness, supra. In the

Caywood Case, the defendant, after assigning a bond and mortgage, obtains possession of them, and assigns them to another person before the first assignment is recorded; and it was held that he was guilty of conversion. Canceling a certificate of membership in a board of trade is a conversion of such certificate. Olds v. Board, 33 Ill. App. 445. The courts in several of the states have held that a sale of the chattel mortgaged property by the mortgagor in possession in denial of the mortgagee's rights was a conversion. White v. Phelps, 12 N. H. 382; Millar v. Allen, 10 R. I. 49; Ashmead v. Kellogg, 23 Conn. 70; Coles v. Clark, 3 Cush. 399. And see Anderson v. Nicholas, 28 N. Y. 600. A curious case arose in Connecticut in an action of trover, where it appeared that in August plaintiff bought of defendant a large amount of ice in the latter's ice house; that there was no agreement as to when the ice should be removed; that in December, part of the ice still remaining, defendant wrote that it was about time to cut another crop, and asked when plaintiff could give up the ice house; the plaintiff told the defendant that he could place the new ice above the plaintiff's ice; that defendant covered plaintiff's ice with several feet of new ice; that a dispute arose, and plaintiff made a formal demand for its ice, which was still covered; that defendant claimed title, and refused to deliver or agree to deliver. Held a conversion by defendant. Hartford Ice Co. v. Greenwoods Co. (Conn.) 23 Atl. 91. Observe that the only conversion in this case was the assumption of ownership of the ice by the defendant. "Any property of a personal nature is the subject of conversion though it has no value except to the owner." Cooley, Torts, 447. "Not only tangible property, but all property of a personal nature, which can be converted. Trover lies for paper, representative of value, choses in action, and corporate stock." McAllister v. Kuhn, 96 U. S. 87; Ayres v. French, 41 Conn. 151; Payne v. Elliot, 54 Cal. 341; Budd v. Railway Co., 12 Or. 271, 7 Pac. 99.

In the case at bar distinct certificates had not been issued for any of the 216 shares embraced in the original certificate, nor had any certificate been issued to Mary Mahaney, or her successor in interest, for the 75 shares. The whole number of shares remained in the name of the defendant upon the books of the corporation. He would, therefore, be entitled, as between the corporation and himself, to the dividends upon the stock, and such dividends would not be paid to his assignee on the 75 shares of stock until her right as a stockholder appeared upon the books of the corporation. Before this could be done, after the death of Mrs. Mahaney, and perhaps in anticipation that her executor might procure the necessary transfer on the corporation books, the defendant assigned the whole stock embraced in the certificate, including the 75 shares, to an officer of the corporation, so that it would be difficult, if not impossible, for the executor to procure any transfer of the 75 shares upon the books. In making this transfer of the whole stock, the defendant wrongfully exercised an active dominion over the 75 shares, claimed title to it, and deprived the executor of the substantial benefit and use of those shares. We are of opinion, both

upon principle and authority, that this was such a conversion of the stock as justifies this action, and entitled the plaintiff to recover. Cook, Stock, Stockh. & Corp. Law (3d Ed.) § 576, and cases cited.

As we have seen, John C. Mahaney, the executor, in his individual name assigned the 75 shares of the stock to the plaintiff. The respondent claims that this assignment conferred no title to the stock upon the plaintiff, as it was not made by Mahaney as executor. John C. Mahaney was the legal owner of the stock in controversy, though he took it as executor, and he could, by an assignment in his individual name, transfer the stock to the plaintiff. Patchen v. Wilson, 4 Hill, 57; Nichols v. Smith, 7 Hun, 580; Merritt v. Seaman, 6 N. Y. 168; Leitch v. Wells, 48 N. Y. 585; In re Callister, 88 Hun, 87, 34 N. Y. Supp. 628, and cases there cited. And the assignment of the stock carried with it a transfer of the cause of action for its conversion. Birdsall v. Davenport, 43 Hun, 552. In the Leitch Case, a husband, who held bank stock as an executor, appears to have transferred it in his own name to his wife, and she transferred the stock to the defendant. It was held that these transfers conveyed a good title in the stock to the defendant. In the Callister Case a party had given a check as administratrix, and it was sought to bind the estate she represented by that check. It was held that it was the check of the administratrix individually, and did not bind the estate. In the case at bar had Mahaney assumed to transfer the stock as executor, it would still have been regarded as his individual act. The controversy here is not between the estate and the executor, but it is between the individual holding the stock and other parties. The point we have last considered was not raised upon the trial, but, as a new trial must be ordered in this case, we have deemed it proper to consider this question in connection with the others.

The plaintiff's exceptions should be sustained, and a new trial ordered, with costs to abide event. All concur.